ORIGINAL

Joseph F. Moore, Jr.
Molly Hartman Dearing
Moore, Myers & Garland, LLC
P.O. Box 8498
Jackson, WY 83002
(307) 733-8668
(307) 733-3220 (Fax)
Attorneys for Plaintiff

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR - 9 2010

Stephan Harris, Clerk
Cheyenne

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

ENSIGN UNITED STATES )
DRILLING, INC., a Colorado )
Corporation. )
 )
 )
            Plaintiff, )
 )
    vs. )          Civil Action No. _____
 )
LISA L. RAMIREZ. )
 )
            Defendant. )
_____ )

**10CV0067**

## COMPLAINT

COMES NOW Plaintiff, Ensign United States Drilling, Inc., by and through its

undersigned counsel, and for its Complaint against Defendant hereby alleges as follows:

### I. Jurisdictional and Venue Facts

1.      Plaintiff Ensign United States Drilling, Inc. (hereafter "Ensign"), is a

corporation organized under the laws of the State of Colorado with its principal place of

business located in Denver County, Colorado.

2. Ensign maintains an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1) called the Ensign United States Drilling, Inc. Employee Benefit Plan (the "Plan").

3. Ensign is the "sponsor" and a "fiduciary" of the Plan as defined under 29 U.S.C. § 1002(16).

4. Under 29 U.S.C. § 1002(14)(c), Ensign is a "party in interest" as an employer of employees covered by the Plan.

5. Ensign pursues this case on behalf of the Plan.

6. The Plan has sue-or-be-sued status under 29 U.S.C. § 1132(d)(1).

7. Defendant Lisa Ramirez ("Ms. Ramirez") is an individual residing in Pavillion, Freemont County, Wyoming.

8. Ms. Ramirez was an "employee" of Ensign within the meaning of 29 U.S.C. § 1002(6).

9. Ms. Ramirez was a "participant" in the Plan within the meaning 29 U.S.C § 1002(7).

10. Ms. Ramirez was also a "fiduciary" of the Plan under 29 U.S.C. § 1002(14)(A).

11. State law that "relates to" the Plan is pre-empted under 29 U.S.C. § 1144(a) and (c).

12. This is a civil action arising under the laws of the United Sates to enforce the terms of the Plan therefore federal jurisdiction exists under 28 U.S.C. § 1131.

13. There are actual controversies between the Parties which are particularly described below.

14. Declaratory relief is permitted under 28 U.S.C. §§ 2201-2202.

15. Venue is proper under 28 U.S.C. § 1391(b) and 29 U.S.C § 1132(e)(2) because the Defendant is a resident of this District.

## II. Facts Common to All Counts

16. Ensign is an employer in the drilling contracting industry.

17. Ensign established and maintained the Plan for the purpose of providing health benefits and benefits in the event of sickness or injury to its employees.

18. On June 23, 2006, Ms. Ramirez was involved in a trip and fall accident (the "Accident") at the home of James Callicoat.

19. Ms. Ramirez incurred significant medical expenses as a result of the Accident and received medical treatment for the injuries from health care professionals.

20. Since the fall, Ms. Ramirez has incurred medical expenses in the amount of One Hundred Seventy Eight Thousand One Hundred Fifteen Dollars and 69/100 Cents ($178,115.69). A Copy of Ms. Ramirez Medical Expense Chart is attached hereto as **Exhibit A**.

21. The health care professionals treating Ms. Ramirez for her injuries billed Ms. Ramirez for their services (the "Medical Bills).

22.     Ms. Ramirez caused the Medical Bills to be submitted to the Plan for payment.

23.     The Plan honored the Medical Bill claims and paid the Medical Bills in the amount of One Hundred Twenty Five Thousand Seven Hundred Sixty Six Dollars ($125,766.00).

24.     Ms. Ramirez sued the third party tortfeasor of the Accident in an action filed in the Ninth Judicial District Freemont County, Wyoming, Civil Action No. CV-2007-0035951 for the injuries she sustained from the Accident.

25.     In that action, the facts in Ms. Ramirez's pleadings and documents take a position that the Medical Bills were reasonable and necessary to treat the injuries she suffered in the Accident. Plaintiff's Designation of Expert Witnesses p. 3-7 (November 3, 2008) (Attached as **Exhibit B**).

26.     On or around April 8, 2009, Ms. Ramirez settled her claims against the third party responsible for her injuries for Three Hundred Thousand Dollars $300,000.00 (the "Settlement").

27.     The Plaintiff's right of recovery is derived from the terms of the Plan itself.

28.     The Plan provides that it has the right to be reimbursed from the proceeds of any settlement Ms. Ramirez received for the injuries she incurred and for which the Plan paid benefits.

29. Specifically, the Plan provides in pertinent part:

## A. Right of Subrogation and Refund

**When this provision applies.** The *participant* may incur medical charges due to *injuries* which may be caused by the act or omission of a third party or a third party may be responsible for payment. In such circumstances, the *participant* may have a claim against that third party, or insurer, for payment of the medical charges. Accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan any rights the *participant* may have to recover payments from any third party or insurer. This subrogation right allows the Plan to pursue any claim which the *participant* has against any third party, or insurer, whether or not the *participant* chooses to pursue that claim. The Plan may make a claim directly against the third party or insurer, but in any event, the Plan has a lien on any amount recovered by the *participant* whether or not designated as payment for medical expense. This lien shall remain in effect until the Plan is repaid in full.

The *participant*:

a.  automatically assigns to the Plan his or her rights against any third party or insurer when this provision applies; and

b.  must repay to the Plan the benefits paid on his or her behalf out of the recovery made from the third party or insurer.

## B. Amount subject to Subrogation or Refund

The *participant* agrees to recognize the Plan's right to subrogation and reimbursement. These rights provide the Plan with a 100%, first dollar priority over any and all recoveries and funds paid by a third party to a

*participant* relative to the *injury* or *illness*, including a priority over any
claim for non-medical charges, attorney fees, or other costs and expenses.
Accepting benefits under this Plan for those incurred medical expenses
automatically assigns to the Plan any and all rights the *participant* may
have to recover payments from any Responsible third party. Further,
accepting benefits under this Plan for those incurred medical expenses
automatically assigns to the Plan the *participant*'s third party Claims.

Notwithstanding its priority to funds, the Plan's subrogation and refund
rights, as well as the rights assigned to it, are limited to the extent to which
the Plan has made, or will make, payments for medical charges as well as
any costs and fees associated with the enforcement of its rights under the
Plan. The Plan reserves the right to be reimbursed for its court costs and
attorneys' fees if the Plan needs to file suit in order to recover payment for
medical expenses from the *participant*. Also, the Plan's right to
subrogation still applies if the recovery received by the *participant* is less
than the claimed damage, and as a result, the claimant is not made whole.

When a right of recovery exists, the *participant* will execute and deliver
all required instruments and papers as well as doing whatever else is
needed to secure the Plan's right of subrogation as a condition to having
the Plan make payments. In addition, the *participant* will do nothing to
prejudice the right of the Plan to subrogate.

The Plan Document is too voluminous to attach in its entirety, however, a true and
correct copy of the Plan's Third Party Recovery Provisions in effect January 1, 2005
through December 31, 2007 are attached hereto as **Exhibit C.**

30.     The Plan has first priority in and is entitled to 100% of any third party recovery. *See* Exh. C.

31.     The Plan has advised Ms. Ramirez that the Plan has the right to be reimbursed in the amount of $125,766.00 out of her Settlement proceeds.

32.     Ms. Ramirez has acknowledged that the Plan has the right to be reimbursed out of her Settlement proceeds and that approximately One Hundred Seventy-Eight Thousand Dollars ($178,000.00) in total medical expenses have been incurred for the treatment of her injuries. See Ltr. Jeffrey A. Tennyson, Esq. to Vicki Edwards (June 22, 2007) (Attached as **Exh. D**); Ltr. Jeffrey A. Tennyson, Esq. to Russel D. Bowman, Jr., Esq. (March 10, 2008) (Attached as **Exh. E**); Email Jeffrey Tennyson, Esq. to John Willemin p. 3, ¶ 1 (April 15, 2009) (Attached as **Exh. F**).

## Count I
## Equitable and Declaratory Relief to Enforce the Terms of the Plan under ERISA

33.     Ensign incorporates herein by reference the allegations set out in paragraphs 1 to 32 above.

34.     There is a real and actual controversy between Ensign and Ms. Ramirez as to whether she is required to reimburse the Plan in the full amount of the Medical Bill claims the Plan honored on her behalf.

35.    Pursuant to 29 U.S.C. § 1132(a)(3), Ensign seeks equitable relief including a declaration of rights under the Plan and specific performance of equitable restitution against Ms. Ramirez to enforce the terms of the ERISA Plan.

36.    Under 29 U.S.C § 1132(a)(3), the Court has authority to enforce equitable relief including ordering restitution of the Settlement as "appropriate equitable relief" to "enforce the terms of the Plan."

WHEREFORE, Ensign requests judgment against the Defendant and requests that the Court:

a.    grant it declaratory judgment and specific performance of restitution against Lisa Ramirez to turn over to the Plan the Settlement proceeds in the amount of at least $125,766.00 for the Medical Bills paid on Ms. Ramirez's behalf and not reimbursed to the Plan;

b.    appropriate pre-judgment and post-judgment interest;

c.    the costs of this action; and

d.    such other relief the Court considers appropriate.

## Count II
## Breach of Fiduciary Duty

37.    Ensign incorporates herein by reference the allegations set out in paragraphs 1 to 36 above.

38. The Settlement and the Plan's reimbursement and subrogation interest in the Settlement are assets of the Plan within the meaning of 29 U.S.C. §1002(21)(A)(i) (the "Assets").

39. Ms. Ramirez was a "fiduciary" within the meaning of 29 U.S.C. 1002(21)(A)(i) because she exercised control over the Assets.

40. By refusing to pay to the Plan a portion of the Settlement proceeds and refusing to direct such payment, Ms. Ramirez has breached her fiduciary duty to the Plan to use the Assets only for the benefit of the Plan and its beneficiaries and not for her own use.

41. Pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109(a), Ms. Ramirez is personally liable to reimburse to the Plan any losses to the Plan resulting from her breach and must restore any profits to the Plan subject to the Plan's Third Party Recovery Provision.

42. Specifically, Ms. Ramirez must pay to the Plan, proceeds from the Settlement in the amount of $125,766.00 for the costs of Medical Bills that were paid on Ms. Ramirez's behalf by the Plan.

43. The Plan has suffered a loss in the amount of $125,766.00 plus attorneys' fees and court costs for the breach of the fiduciary duty by Ms. Ramirez for which she is personally liable.

WHEREFORE, Ensign requests judgment against the Defendant and requests that this Court:

a.        award its damages in the amount of $125,766.00 for the amount of

          the Medical Bills paid on Ms. Ramirez's behalf and not reimbursed

          to the Plan;

b.        attorneys fees Ensign has incurred in pursuing this action in an

          amount according to proof, pursuant to 29 U.S.C § 1132(g);

c.        appropriate pre-judgment and post-judgment interest;

d.        costs of this action; and

e.        such other relief as this Court considers appropriate.

## Count III
## Breach of Contract

44.    Ensign incorporates herein by reference the allegations set out in

paragraphs 1 to 43 above.

45.    An ERISA plan is interpreted like any other contract.

46.    The Plan constitutes a valid contract.

47.    The Plan contains terms that obligated Ms. Ramirez to reimburse the Plan

in the event that she recovered from the third party tortfeasor. *See* Plan Third Party

Recovery Provision at Exh. C.

48.    Ms. Ramirez recovered proceeds in the Settlement from the third party

tortfeasor.

49.     Ms. Ramirez has breached the terms of the Plan because she has not

reimbursed the Plan with her Settlement proceeds for the Medical Bills the Plan has

honored as a result of the Accident.

50.     As a result of Ms. Ramirez's breach, the Plan has incurred damages.

WHEREFORE, Ensign requests judgment against the Defendant and requests that

this Court:

f.          award it damages in the amount of $125,766.00 for the amount of

            the Medical Bills paid on Ms. Ramirez's behalf and not reimbursed

            to the Plan as required by the Third Party Recovery Provision;

g.          attorneys fees Ensign has incurred in pursuing this action in an

            amount according to proof, pursuant to 29 U.S.C § 1132(g);

h.          appropriate pre-judgment and post-judgment interest;

i.          costs of this action; and

j.          such other relief as this Court considers appropriate.

## Count IV
## Contractual Attorneys' Fees

51.     Ensign incorporates herein by reference the allegations set out in

paragraphs 1 to 50 above.

52.     The Plan document contains a contractual attorneys fee provision.

53.     The Plan document specifically provides:

> The Plan reserves the right to be reimbursed for its court costs and
> attorneys' fees if the Plan needs to file suit in order to recover
> payment for medical expenses from the *participant*. *See* Exh. C.

54. The Plan expended $125,766.00 in Medical Bills arising from the

Accident.

55. To date, Ms. Ramirez has failed to reimburse the Plan as required under

the Plan documents from the proceeds she received in the Settlement.

56. As a result of Ms. Ramirez's failure to reimburse the Plan, Ensign is

forced to file this lawsuit against Ms. Ramirez to recover its Medical Payments.

57. Accordingly, Ensign has incurred court costs and attorneys' fees for

enforcing the provisions of the Plan.

WHEREFORE, Ensign requests judgment against the Defendant and requests that

this Court:

a. Order Defendant to pay Plaintiff's attorneys' fees and court costs incurred

in enforcing the terms of the Plan in an amount to be proven at trial; and

b. Such other relief as this Court considers appropriate.

## Count V
## Judicial Estoppel

58. Ensign incorporates herein by reference the allegations set out in

paragraphs 1 through 57 above.

59. Ms. Ramirez sued the third party tortfeasor of the Accident.

60.     In that lawsuit, Ms. Ramirez filed pleadings and documents that took the position that the Medical Bills were reasonable and necessary to treat the injuries she suffered in the Accident. *See* Exh. B.

61.     A position on whether the Medical Bills were reasonable and necessary to treat the injuries suffered in the Accident is a factual statement.

62.     Accordingly, Ms. Ramirez is judicially estopped from assuming an inconsistent position in the present lawsuit.

WHEREFORE, Ensign requests judgment against the Defendant and requests that this Court:

a.      order that Defendant is judicially estopped from taking the position that the Medical Bills were were not reasonable and necessary to treat the injuries she suffered in the Accident; and

b.      order such other relief as this Court considers appropriate.

DATED this 6 day of April, 2010.

Joseph F. Moore, Jr. (Atty. No. 5-2718)
H. Molly Hartman (Atty. No. 6-4247)
Moore, Myers & Garland, LLC
P.O. Box 8498
Jackson, WY 83002
(307) 733-8668
(307) 733-3220 (Fax)
MM&G@jhlaw.com
*Attorneys for Plaintiff*

## Ramirez Medical Expenses

| Provider | Service | Date | Charge | Total |
|---|---|---|---|---|
| Wyoming Medical Center | | 10/27/2006 | $2,705.50 | $2,705.50 |
| | | | | |
| Family Chiropractic Center | Chiropractic | 10/11/06 - 10/26/06 | $415.00 | $415.00 |
| | | | | |
| Wind River Medical Clinic | | 7/26/2006 | $122.00 | |
| | | 7/27/2006 | $136.00 | |
| | | 8/18/2006 | $136.00 | |
| | | 8/23/2006 | $122.00 | |
| | | 9/21/2006 | $122.00 | |
| | | 9/28/2006 | $180.00 | |
| | | 11/27/2006 | $122.00 | |
| | | 1/5/2007 | $268.00 | |
| | | 1/8/2007 | $119.00 | |
| | | 5/24/2007 | $150.00 | $1,477.00 |
| | | | | |
| | | | | |
| Fremont Therapy Group | PT | 5/29/07 - 6/26/07 | $931.00 | $931.00 |
| | | | | |
| Pineridge | MRI | 7/26/2006 | $2,225.44 | |
| | X-ray | 3/26/2007 | $315.25 | $2,540.69 |
| | | | | |
| Twin Cities Spine Center | Consultation | 7/14/2006 | $275.40 | |
| | X-ray | 7/14/2006 | $144.50 | |
| | Surgery | 1/11/2007 | $6,787.70 | |
| | Spine seg fix | 1/11/2007 | $2,864.43 | |
| | Assist surgery | 1/11/2007 | $1,696.93 | |

EXHIBIT A

| | | | |
|---|---|---|---|
| | Assist spine seg fix | 1/11/2007 | $716.11 | $12,485.07 |
| | | | | |
| Fremont Orthopaedic Associates | Initial visit | 6/14/2006 | $100.00 | |
| | Office visit | 7/10/2006 | $40.00 | |
| | Office visit | 9/20/2006 | $40.00 | |
| | Office visit | 3/21/2007 | $75.00 | |
| | Arthrocentesis, aspiration | 3/21/2007 | $129.00 | |
| | Office visit | 4/4/2007 | $75.00 | $459.00 |
| | | | | |
| Southwest Medical Associates | Initial visit | 2/6/2008 | $200.00 | |
| | Radiology | 2/6/2008 | $625.00 | |
| | Office visit | 2/13/2008 | $150.00 | |
| | Comp. office visit | 3/5/2008 | $300.00 | |
| | Office visit | 6/11/2008 | $200.00 | |
| | EMG, nerve conduction | 7/25/2008 | $1,630.00 | |
| | Office visit | 9/26/2008 | $150.00 | $3,255.00 |
| | | | | |
| Fremont Family Practice | Office visit | 7/17/2006 | $73.00 | |
| | Office visit | 7/28/2006 | $73.00 | |
| | Office visit | 8/14/2006 | $73.00 | |
| | Office visit | 8/18/2006 | $73.00 | |
| | Office visit | 8/25/2006 | $73.00 | |
| | Office visit | 9/13/2006 | $73.00 | |
| | Sensitivity, misc. | 9/13/2006 | $68.70 | |
| | Urinalysis | 9/13/2006 | $59.55 | |
| | Culture | 9/13/2006 | $77.22 | $643.47 |
| | | | | |
| Central Wyoming Neurosurgery | Office visit | 9/20/2006 | $288.00 | |
| | Office visit | 10/27/2006 | $136.00 | |
| | Drug screen | 10/27/2006 | $50.00 | |

|  |  |  |  |
|---|---|---|---|
|  | Office visit | 11/17/2006 | $86.00 |
|  | Office visit | 12/28/2006 | $90.00 |
|  | Office visit | 12/28/2006 | $199.00 |
|  | ECG | 12/28/2006 | $47.00 |
|  | Drug screen | 12/28/2006 | $50.00 |
|  | Radiology | 4/26/2007 | $95.00 |
|  | Radiology | 4/26/2007 | $120.00 |
|  | Office visit | 4/26/2007 | $136.00 |
|  | Office visit | 6/22/2007 | $136.00 |
|  | Radiology | 9/14/2007 | $95.00 |
|  | Radiology | 9/14/2007 | $140.00 |
|  | Office visit | 9/14/2007 | $136.00 | $1,804.00 |
|  |  |  |  |
| Riverton Chiro Clinic | Treatment | 6/26/2006 | $49.00 |
|  | Treatment | 6/30/2006 | $49.00 |
|  | Treatment | 6/30/2006 | $21.00 |
|  | Treatment | 6/30/2006 | $215.00 |
|  | Treatment | 7/3/2006 | $49.00 |
|  | Treatment | 7/3/2006 | $21.00 |
|  | Treatment | 7/5/2006 | $49.00 |
|  | Treatment | 7/5/2006 | $21.00 |
|  | Treatment | 7/7/2006 | $49.00 |
|  | Treatment | 7/7/2006 | $21.00 |
|  | Treatment | 7/10/2006 | $49.00 |
|  | Treatment | 7/10/2006 | $21.00 |
|  | Treatment | 7/12/2006 | $49.00 |
|  | Treatment | 7/12/2006 | $21.00 |
|  | Treatment | 7/17/2006 | $49.00 |
|  | Treatment | 7/17/2006 | $21.00 |
|  | Treatment | 7/17/2006 | $39.90 |

| | | | | |
|---|---|---|---|---|
| | Treatment | 7/20/2006 | $49.00 | |
| | Treatment | 7/20/2006 | $21.00 | |
| | Treatment | 7/20/2006 | $40.50 | |
| | Treatment | 7/21/2006 | $49.00 | |
| | Treatment | 7/21/2006 | $21.00 | |
| | Treatment | 7/25/2006 | $49.00 | |
| | Treatment | 7/25/2006 | $21.00 | |
| | Treatment | 7/28/2006 | $49.00 | |
| | Treatment | 7/28/2006 | $21.00 | |
| | Treatment | 8/1/2006 | $49.00 | |
| | Treatment | 8/1/2006 | $21.00 | |
| | Treatment | 8/3/2006 | $49.00 | |
| | Treatment | 8/3/2006 | $21.00 | |
| | Treatment | 8/7/2006 | $49.00 | |
| | Treatment | 8/7/2006 | $21.00 | |
| | Treatment | 8/10/2006 | $49.00 | |
| | Treatment | 8/17/2006 | $49.00 | |
| | Treatment | 8/28/2006 | $272.54 | |
| | Treatment | 9/11/2006 | $49.00 | |
| | Treatment | 9/18/2006 | $73.00 | |
| | Treatment | 9/18/2006 | $49.00 | |
| | Treatment | 9/18/2006 | $32.00 | |
| | Treatment | 9/20/2006 | $49.00 | |
| | Treatment | 9/20/2006 | $32.00 | |
| | Treatment | 9/25/2006 | $49.00 | |
| | Treatment | 9/25/2006 | $32.00 | |
| | Treatment | 10/3/2006 | $49.00 | |
| | Treatment | 10/6/2006 | $49.00 | |
| | | | $2,157.94 | |

| Abbott Northwestern Hospital | Surgery | 1/11/2007-1/18/2007 | $131,433.15 | $131,433.15 |
|---|---|---|---|---|
| Sheftel J. Cohen | | 1/14/2007 | $281.00 | $281.00 |
| Perry F. Cook | | 7/26/2006 | $236.30 | |
| | | 7/26/2006 | $236.30 | $472.60 |
| Roy G. Hediger | | 3/26/2007 | $56.10 | $56.10 |
| Amy T. Kentworthy | | 9/12/2006 | $180.00 | $180.00 |
| Steven L. Lillehaug | | 1/12/2007 | $90.00 | $90.00 |
| Roman Melamed | | 1/13/2007 | $209.00 | |
| | | 1/14/2007 | $209.00 | |
| | | 1/15/2007 | $209.00 | $627.00 |
| Matthew Monsein | | 1/11/2007 | $413.00 | |
| | | 1/12/2007 | $162.00 | |
| | | 1/16/2007 | $162.00 | |
| | | 1/17/2007 | $162.00 | $899.00 |
| Arvind Nehra | | 1/11/2007 | $32.00 | $32.00 |
| Geoffrey Raile | | 1/17/2007 | $66.00 | $66.00 |
| Stanley Skinner | | 1/11/2007 | $1,760.00 | |
| | | 1/11/2007 | $244.00 | |
| | | 1/11/2007 | $244.00 | |

| Name | Description | Date | Amount | Total |
|---|---|---|---|---|
|  |  | 1/11/2007 | $196.00 |  |
|  |  | 1/11/2007 | $158.00 |  |
|  |  | 1/11/2007 | $157.00 |  |
|  |  | 1/11/2007 | $61.00 |  |
|  |  | 1/11/2007 | $110.00 |  |
|  |  | 1/11/2007 | $105.00 |  |
|  |  | 1/11/2007 | $88.00 |  |
|  |  | 1/11/2007 | $61.00 |  |
|  |  | 1/11/2007 | $61.00 |  |
|  |  | 1/11/2007 | $61.00 | $3,306.00 |
|  |  |  |  |  |
| Stephen Tuohy |  | 1/11/2007 | $2,686.64 |  |
|  |  | 1/11/2007 | $351.15 | $3,037.79 |
|  |  |  |  |  |
| Rita White |  | 1/11/2007 | $2,625.48 | $2,625.48 |
|  |  |  |  |  |
| David K. Williams |  | 10/27/2006 | $400.24 |  |
|  |  | 10/27/2006 | $400.24 |  |
|  |  | 10/27/2006 | $400.24 |  |
|  |  | 10/27/2006 | $148.13 |  |
|  |  | 10/27/2006 | $148.13 |  |
|  |  | 10/27/2006 | $148.13 |  |
|  |  | 10/27/2006 | $173.37 | $1,818.48 |
|  |  |  |  |  |
| Las Vegas Skin & Cancer Clinic | Office visit | 2/12/2008 | $20.00 |  |
|  | Office visit | 3/6/2009 | $20.00 | $40.00 |
|  |  |  |  |  |
| L. Joanne Hedgecock | Office visit | 7/3/2006 | $59.00 | $59.00 |
|  |  |  |  |  |
| Kozmary Center for Pain Mgmt. | Office visit | 1/15/2008 | $300.00 |  |

| | | |
|---|---|---|
| Office visit | 1/31/2008 | $125.00 |
| Office visit | 2/14/2008 | $125.00 |
| Office visit | 3/20/2008 | $125.00 |
| Office visit | 4/17/2008 | $125.00 |
| Office visit | 5/15/2008 | $125.00 |
| Office visit | 6/10/2008 | $125.00 |
| Letter | 6/27/2008 | $75.00 |
| Office visit | 7/15/2008 | $125.00 |
| Office visit | 8/5/2008 | $125.00 |
| Office visit | 9/2/2008 | $125.00 |
| Office visit | 10/7/2008 | $125.00 |
| | | **$1,625.00** |
| | | |
| Town & Country Pharmacy (Cheyenne) | Cyclobenzaprine | 12/22/2008 | $36.91 |
| | Clonidine | 1/14/2009 | $2.14 |
| | Clonazepam | 1/14/2009 | $3.66 |
| | Propoxy | 1/14/2009 | $4.72 |
| | Morphine Sulf | 1/21/2009 | $223.12 |
| | Temazepam | 1/21/2009 | $5.49 |
| | Celebrex | 1/21/2009 | $223.04 |
| | Cyclobenzaprine | 1/21/2009 | $18.64 |
| | Lyrica | 1/21/2009 | $136.44 |
| | Clonidine | 1/27/2009 | $3.48 |
| | Lyrica | 2/12/2009 | $203.90 |
| | Temazepam | 2/12/2009 | $5.49 |
| | Celebrex | 2/12/2009 | $223.04 |
| | Cyclobenzaprine | 2/16/2009 | $18.64 |
| | Clonazepam | 3/5/2009 | $4.48 |
| | Temazepam | 3/5/2009 | $5.49 |
| | | | **$1,118.68** |
| | | | |
| Safeway Pharmacy (Cheyenne) | Clonazepam | 10/29/2008 | $30.39 |

| | | | |
|---|---|---|---|
| | Amitriptyline | 12/4/2008 | $7.00 | |
| | Cyclobenzaprin | 12/4/2008 | $7.00 | |
| | Lyrica | 12/4/2008 | $186.69 | |
| | Metronidazole | 12/5/2008 | $7.00 | |
| | Celebrex | 12/9/2008 | $106.50 | |
| | Clonazepam | 12/15/2008 | $30.39 | |
| | Methadone | 12/15/2008 | $23.58 | |
| | Oxycodone | 12/15/2008 | $90.20 | $488.75 |
| | | | | |
| Smith's Pharmacy (Riverton) | Cyclobenzaprin | 7/3/2006 | $15.66 | |
| | Celebrex | 7/3/2006 | $31.20 | |
| | Hydroc/Apap | 7/8/2006 | $13.97 | |
| | Effexor | 7/17/2006 | $96.94 | |
| | Hydroc/Apap | 7/17/2006 | $11.10 | |
| | Hydroc/Apap | 7/24/2006 | $28.30 | |
| | Clonazepam | 7/27/2006 | $35.69 | |
| | Cyclobenzaprin | 7/28/2006 | $15.96 | |
| | Elidel | 7/28/2006 | $62.63 | |
| | Effexor | 8/10/2006 | $191.62 | |
| | Methadone | 8/14/2006 | $7.96 | |
| | Floxin | 8/18/2006 | $58.15 | |
| | Methadone | 8/26/2006 | $13.41 | |
| | Cyclobenzaprin | 8/28/2006 | $15.96 | |
| | Elidel | 8/30/2006 | $62.63 | |
| | Clonazepam | 9/1/2006 | $35.68 | |
| | Effexor | 9/1/2006 | $191.62 | |
| | Cephalexin | 9/13/2006 | $25.36 | |
| | Methadone | 9/27/2006 | $7.83 | |
| | Clonazepam | 10/5/2006 | $35.68 | |
| | Cyclobenzaprin | 10/5/2006 | $15.96 | |

| | Methadone | 10/7/2006 | $12.68 | $985.99 |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | $178,115.69 | $178,115.69 |
| TOTAL | | | | |

IN THE DISTRICT COURT OF FREMONT COUNTY, WYOMING

NINTH JUDICIAL DISTRICT

LISA L. RAMIREZ,                    )
                                    )
            Plaintiff,              )
                                    )        Civil Action No. 35951
    vs.                             )
                                    )
JAMES CALLICOAT,                    )
                                    )
            Defendant.              )

FREMONT COUNTY, WY
FILED
IN THE DISTRICT COURT

NOV - 3 2008

Katie Brodie Meredith Clerk of Cou
By_____
DEPUTY CLERK

## PLAINTIFF'S DESIGNATION OF EXPERT WITNESSES

COMES NOW Plaintiff Lisa Ramirez, by and through counsel, Jeffrey A.
Tennyson, and in accordance with this Court's Scheduling Order, designates the expert
witnesses listed in the attached Exhibit A incorporated herein by this reference.

Plaintiff reserves the right to amend this designation as the medical treatment for
Plaintiff continues.

DATED this _2 7·4 day of October, 2008.

                                    Jeffrey A. Tennyson
                                    Attorney at Law
                                    P.O. Box 4162
                                    Jackson, WY 83001
                                    (307) 733-1797
                                    Attorney for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that on this 2 7·4 day of October, 2008 a true and complete copy
of the foregoing document was placed in the U.S. mail, postage prepaid, addressed to the
following:

                David Hooper
                Hooper Law Offices. P.C.
                P.O. Box 753
                Riverton, Wyoming 82501
                Attorney for Defendant

                                    Jeffrey A. Tennyson

-1-

EXHIBIT B

**EXHIBIT "A"**

**Ken Burnett**
**7615 Elling Road**
**Cheyenne, WY 82009**
**(307) 637-6712**

This witness has been retained as an expert witness in the area of building code compliance, design, safety, and construction.

Mr. Burnett has reviewed discovery responses and photographs of the Defendant's property provided by the defense. He has also conducted preliminary investigations into the applicability of building codes, inspection requirements and the like to the Defendant's property. He intends to inspect, measure, photograph and investigate the location of the incident in question once arrangements can be made with the defense. Mr. Burnett is also expected to review any depositions of the parties and other witnesses relative to the condition of the deck and property or the manner in which the incident happened.

This witness will testify as to the applicable sections of the Uniform Building Code and other standards for design and construction and the best practices of the construction industry. Mr. Burnett will testify regarding the specific codes, rules and regulations violated by Defendant with respect to the deck and property and will specifically discuss how the absence of stairs, guardrails or handrails where the incident occurred was in violation of applicable codes and regulations. He will demonstrate with photographs, diagrams and the like, how the deck and stairs, as they existed on June 23, 2006, violated numerous multiple sections of applicable building codes and standards of the industry.

Mr. Burnett is expected to testify that Defendant failed to maintain his deck and property in a safe and reasonable manner and that the deck at issue was unsafe and hazardous at the time of the incident in question. He is expected to testify that the conduct of the Defendant was negligent and that such conduct was the direct and proximate cause of the Plaintiff's fall at issue here.

Further, Mr. Burnett may testify and demonstrate how the deck and stairs should have been built or modified to comply with these standards and code sections. He may also testify as to the precautionary safety measures that Defendant should have taken to prevent injury to others before any corrections or modifications could be made to the deck to make it safe.

A preliminary report authored by this witness is attached hereto and incorporated herein. That report and this designation will be supplemented to account for new information gleaned from an inspection of the property, depositions, witness statements, or supplemental discovery responses.

This witness will testify as to his professional qualifications, professional licenses, organizations to which he belongs, and specific honors that he has been awarded. This witness' *curriculum vitae* and list of prior testimony is attached hereto and incorporated herein by this reference.

If the deposition of this witness is taken, it is incorporated here by this reference.

**Tuenis Zondag, M.D., M.P.H.**
**Central Wyoming Neurosurgery**
**1026 East 2nd Street**
**Casper, Wyoming 82601**
**(307) 266-4000**

Dr. Zondag is a pain specialist who treated Plaintiff Lisa Ramirez following the surgery performed by Dr. Perra in January of 2007. Plaintiff expects to call this physician as an expert witness to testify generally about his evaluation, treatment, therapy, and prognosis given to Ms. Ramirez following the incident in question and the surgery by Dr. Perra.

Dr. Zondag's testimony will be in conformity with his medical records, the medical history of Plaintiff, his observations, impressions, and opinions formed during the course of his treatment of Plaintiff, and the records and opinions of other treating physicians and health care providers.

This witness is expected to render opinions regarding medical causation issues. He is expected to testify that Ms. Ramirez suffered an aggravation her pre-existing conditions in her spine and likely suffered new injuries in that fall as well. This witness will state opinions as to whether the injuries and symptoms being suffered by Plaintiff since the fall can be apportioned between the pre-existing conditions and the aggravation of those conditions in the fall. If this witness believes that such an apportionment is possible, he will give his opinion as to the apportionment.

Dr. Zondag may also testify that the medical bills in question were reasonable and necessary to treat the injuries suffered by Plaintiff. He will further testify as to the reasonable expenses that can be anticipated for the probable future treatment of the Plaintiff. He is also expected to testify concerning the amount of disability suffered by Plaintiff as a result of the fall in question and generally as to the ramifications of the injuries that she sustained.

All opinions expressed by Dr. Zondag will be stated to a reasonable degree of medical probability.

Dr. Zondag will testify as to his education and training, his professional qualifications, professional licenses, organizations to which he belongs, and specific honors that he has been awarded. In the event the deposition of this witness is taken, it is incorporated here by this reference.

**Steven Kozmary, M.D.**
**Kozmary Center for Pain Management**
**2851 El Camino Avenue, Suite 101**
**Las Vegas, Nevada 89102**
**(702) 567-4843**

Dr. Kozmary is a pain specialist who provided pain management treatment to Plaintiff Lisa Ramirez while she lived in the Las Vegas, Nevada area. Plaintiff expects to call this physician as an expert witness to testify generally about his evaluation, treatment, therapy, and prognosis, given to Ms. Ramirez following the incident in question and during his treatment of her.

Dr. Kozmary's testimony will be in conformity with his medical records, the medical history of the Plaintiff, his observations, impressions, and opinions formed during the course of his treatment of Plaintiff, and the records and opinions of other treating physicians and health care providers.

This witness is expected to render opinions regarding medical causation issues and is expected to testify that Lisa Ramirez suffered an aggravation of pre-existing conditions in her spine in the fall and likely suffered new injuries in the fall as well. This witness will state opinions as to whether the injuries and symptoms suffered by Plaintiff since the fall can be apportioned between the pre-existing conditions and the aggravation of those conditions in the fall. If this witness believes that such an apportionment is possible, he will give his opinion as to the apportionment.

Dr. Kozmary is also expected to testify as to the amount of disability being suffered by Ms. Ramirez and generally as to the ramifications of the injuries that were sustained by the Plaintiff.

Dr. Kozmary is also expected to testify that the medical bills in question were reasonable and necessary to treat the injuries suffered by Plaintiff in the fall in question. He will further testify as to the reasonable expenses that can be anticipated for the probable future treatments of Plaintiff.

All opinions expressed by Dr. Kozmary will be to a reasonable degree of medical probability.

Dr. Kozmary will testify as to his professional qualifications, professional licenses, organizations to which he belongs, and specific honors that he has been awarded. In the event his deposition is taken, it is incorporated here by this reference. Plaintiff anticipates that the trial testimony of this witness will have to be conducted by means of videotaped deposition or some other alternative.

**Frank Wheeler, M.D.**
**Catherine LaCroix, L.C.S.W.**
**Lander Valley Physician Practices**
**830 Lincoln Street**
**Lander, Wyoming 82520**

Dr. Wheeler is a psychiatrist who provided psychiatric care and treatment to Lisa Ramirez both before and after she was injured in the fall at issue. Ms. LaCroix is a counselor in the same facility as Dr. Wheeler and also provided mental health treatment to Ms. Ramirez before and after the fall. Dr. Wheeler, or in the alternative Ms. LaCroix, may be called to testify generally about the treatment and therapy given to Ms. Ramirez.

As reflected in discovery responses and her medical records, Lisa Ramirez occasionally suffered from severe depression and other mental health issues before the fall and injuries at issue. Dr. Wheeler provided treatment to Ms. Ramirez during an involuntary hospitalization after a suicide attempt in early 2006. He is expected to testify as to the treatment provided to her during that hospitalization and the follow up treatment and care provided to her following discharge, both before and after she was injured in the fall at issue.

This witness is expected to testify that Plaintiff had a history of depression and other mental health conditions before the fall at issue and how she was coping with these issues before being injured in the fall. He is expected to testify that she had greatly benefited from her mental health treatments before being injured in the fall and that she was demonstrating a commitment to recovery from these conditions while under his care. He is further expected to testify that Plaintiff's pre-existing conditions made her more susceptible to mental, emotional and psychological problems stemming from the physical injuries suffered in the fall.

Dr. Wheeler is expected to testify that Ms. Ramirez suffered and continues to suffer emotional distress and mental anguish as a result of her fall and the injuries suffered in that fall. He is expected to testify that the injuries suffered in the fall and the resulting severe pain, immobility, and disabilities caused an aggravation of Plaintiff's pre-existing mental health and emotional conditions and caused new problems for her.

This witness may be asked to apportion Plaintiff's mental health conditions between those that pre-dated the fall in question and the aggravation of prior problems stemming from the fall and Plaintiff's physical injuries.

Dr. Wheeler's testimony will be in conformity with his records, the medical history of the Plaintiff, his observations, impressions, and opinions formed during the course of his treatment of Ms. Ramirez, and the records and opinions of other treating physicians and health care providers.

Dr. Wheeler may also testify that the therapy bills in question were reasonable and necessary to treat Ms. Ramirez as a result of the fall and physical injuries in question and as to the reasonable expenses that can be anticipated for probable future treatment and therapy for Plaintiff. He may further testify concerning the amount of disability suffered by the Plaintiff and generally as to the ramifications of the incident in question.

All opinions expressed by Dr. Wheeler will be to a reasonable degree of medical and psychiatric probability.

Dr. Wheeler will testify as to his professional qualifications, professional licenses, organizations to which he belongs, and specific honors he has been awarded. If his deposition is taken, it is incorporated here by this reference.

Jeffrey R. Gray, D.C.
Riverton Chiropractic Clinic, P.C.
1221 East Main
Riverton, Wyoming 82501
(307) 856-4945

This witness provided chiropractic care and treatment to Lisa Ramirez before and after her fall on June 23, 2006 at the Defendant's property. He is expected to testify as to the treatment and therapy given to Ms. Ramirez for the injuries she suffered in the fall and as to her condition before and after the fall.

The testimony of this witness will be in conformity with the medical records of these treatments, the medical history of the Plaintiff, his observations, impressions, and opinions formed during the course of his treatment of Plaintiff, and the records and opinions of other treating physicians and health care providers.

This witness is expected to render opinions regarding medical causation issues and what injuries and damages were suffered in the fall in question. He is expected to testify that Ms. Ramirez had significant pre-existing conditions in her spine before the fall at issue and that she suffered an aggravation those pre-existing conditions and that she likely suffered new injuries in that fall as well. This witness will state opinions as to whether the injuries and symptoms suffered by Plaintiff since the fall can be apportioned between the pre-existing conditions and the aggravation of those conditions in the fall. If this witness believes that such an apportionment is possible, he will give his opinion as to the apportionment.

This expert is also expected to testify that the medical bills in question were reasonable and necessary to treat the injuries suffered by Plaintiff in the fall in question. He will further testify as to the reasonable expenses that can be anticipated for the probable future treatments of Plaintiff. He may further testify concerning the amount of disability suffered by the Plaintiff and generally as to the ramifications of the injuries that were sustained by the Plaintiff.

All opinions expressed by this witness will be to a reasonable degree of medical and chiropractic probability.

This witness may also lay the foundation for various exhibits such as hospital and doctor records, x-rays, bills, notes, and other documents relating to the treatment of Plaintiff. He may also demonstrate the condition and injuries sustained by Plaintiff using models, charts and diagrams.

This witness will testify as to his professional qualifications, professional licenses, organizations to which he belongs, and specific honors that he has been awarded. If his deposition is taken, it is incorporated herein by this reference.

Michael Pryor, M.D.
Orthopaedic Surgery
815 East Main Street
Lander, Wyoming 82520-3497
(307) 332-9720

This orthopedic physician provided an orthopedic evaluation of Plaintiff Lisa Ramirez before she fell at the Defendant's property on June 23, 2006 and referred her to Dr. Joseph Perra in Minnesota for further specialized evaluation of her adult scoliosis condition. After the Plaintiff was injured in the fall in question, this witness provided her with medical treatment and referred her to a pain specialist to address the severe pain, limitations and disabilities.

Plaintiff expects to call this physician to testify as an expert witness about his evaluation, treatment, therapy, and prognosis, given to Ms. Ramirez following the incident in question. Dr. Pryor's testimony will be in accordance with his medical records, the medical history of Plaintiff, his observations, impressions, and opinions formed during the course of his treatment of Plaintiff, and the records and opinions of other treating physicians and health care providers.

This witness may be asked to render opinions regarding medical causation issues and what injuries and damages were suffered in the fall in question. He is expected to testify that Ms. Ramirez suffered an aggravation pre-existing conditions in her spine and that she likely suffered new injuries in that fall as well. This witness will state opinions as to whether the injuries and symptoms being suffered by Plaintiff since the fall at Defendant's property can be apportioned between the pre-existing conditions and the aggravation of those conditions in the fall. If this witness believes that such an apportionment is possible, he will give his opinion as to the apportionment.

Dr. Pryor may also testify that the medical bills in question were reasonable and necessary to treat the injuries suffered by Plaintiff. He will further testify as to the reasonable expenses that can be anticipated for probable future treatment of Plaintiff. He may further testify concerning the amount of disability suffered by Plaintiff as a result of the fall in question and generally as to the ramifications of her injuries.

All opinions expressed by Dr. Pryor will be stated to a reasonable degree of medical probability.

This witness will testify as to his education and training, his professional qualifications, professional licenses, organizations to which he belongs, and specific honors that he has been awarded. In the event the deposition of this witness is taken, it is incorporated here by this reference. Plaintiff anticipates that the trial testimony of this witness may have to be conducted by means of videotaped deposition or some other alternative.

**Joseph H. Perra, M.D.**
**Twin Cities Spine Center**
**600 Piper Building 913 East 26th Street**
**Minneapolis, Minnesota 55404-4515**
**(612) 755-6200**

Dr. Perra is one of the neurosurgeons who performed an extensive operation on the spine of Lisa Ramirez in January of 2007. This physician evaluated Plaintiff's spine conditions and severe symptoms soon after her June 23, 2006 fall. In January of 2007, Dr. Perra and others performed an extensive fusion surgery on Plaintiff's spine to alleviate or lessen the severe symptoms she suffered since the fall at issue.

Plaintiff expects to call this physician to testify as an expert witness about his evaluation, treatment, therapy, and prognosis, given to Ms. Ramirez following the fall in question and the surgery he performed on her spine. This testimony will be in accordance with the hospital reports and his medical records, the medical history of Plaintiff, his observations, impressions, and opinions formed during the course of his treatment of Plaintiff, and the records and opinions of other treating physicians and health care providers.

This witness is expected to render opinions regarding medical causation issues and what injuries and damages were suffered in the fall. He is expected to testify that Ms. Ramirez suffered an aggravation of pre-existing conditions in her spine and that she likely suffered new injuries in the fall as well. This witness will state opinions as to whether the injuries and symptoms suffered by Plaintiff since the fall can be apportioned between the pre-existing conditions and the aggravation of those conditions in the fall. If this witness believes that such an apportionment is possible, he will give his opinion as to the apportionment.

Dr. Perra may also testify that the medical bills in question were reasonable and necessary to treat the injuries suffered by Plaintiff in the fall in question. He will further testify as to the reasonable expenses that can be anticipated for the probable future treatments for the Plaintiff. He may further testify concerning the amount of disability suffered by Plaintiff as a result of the fall in question and generally as to the ramifications of the injuries she sustained.

All opinions expressed by Dr. Perra will be stated to a reasonable degree of medical probability.

This witness will testify as to his education and training, his professional qualifications, professional licenses, organizations to which he belongs, and specific honors that he has been awarded. In the event the deposition of this witness is taken, it is incorporated here by this reference. Plaintiff anticipates that the trial testimony of this witness may have to be conducted by means of videotaped deposition or some other alternative.

**Vanessa Bennis, M.D.**
**Las Vegas Skin and Cancer Clinic**
**4488 S Pecos Drive**
**Las Vegas, Nevada 89121**
**(702) 436-1001**

Dr. Vanessa Bennis is a dermatologist who treated Plaintiff for skin lesions and ulcers that formed while she was bedridden and completely immobile with pain and other symptoms after the fall at issue. This witness may be called to testify and give expert opinions about her treatment of Plaintiff. She is expected to testify that the skin problems were a direct result of Plaintiff's incapacitation following her injuries from the fall. She will also testify that the medical expenses to treat these conditions were reasonable and necessary and she will give opinions about what care and treatment may be necessary to treat Plaintiff's condition in the future.

Plaintiff anticipates that the trial testimony of this witness will have to be conducted by means of videotaped deposition some other alternative.

**Desert Valley Therapy**
**2055 E Sahara Ave**
**Las Vegas, Nevada 89104**
**(702) 735-1501**

Plaintiff received physical therapy at this facility and one of her treating physical therapists may be called to testify and provide expert opinions. This witness is expected to testify as to the treatment and therapy given to Ms. Ramirez for the injuries she suffered in the fall in question.

The testimony from this witness will generally be in accordance with the medical records of these treatments, the medical history of Plaintiff, the therapists' observations, impressions, and opinions formed during the course of treating Plaintiff, and the records and opinions of treating physicians and other health care providers.

This witness may also testify that the therapy bills in question were reasonable and necessary to treat the injuries suffered by the Plaintiff as a result of the fall in question and as to the reasonable expenses that can be anticipated for the probable future treatments of Plaintiff. This witness may further testify concerning the amount of disability suffered by Plaintiff and generally as to the ramifications of the injuries sustained by Plaintiff.

All opinions expressed by this witness will be to a reasonable degree of medical probability.

This witness may also asked to lay the foundation for various exhibits such as hospital and doctor records, x-rays, bills, notes, and other documents relating to the treatment of Plaintiff. They may also demonstrate the condition and injuries sustained by Plaintiff using models, charts and diagrams.

This witness will testify as to his professional qualifications, professional licenses, organizations to which he belongs, and specific honors that he has been awarded. If his deposition is taken, it is incorporated herein by this reference.

**PLAINTIFF RESERVES THE RIGHT TO CALL ANY WITNESSES LISTED BY THE DEFENDANT.**

**PLAINTIFF RESERVES THE RIGHT TO LIST ADDITIONAL WITNESSES AS PLAINTIFF CONTINUES WITH HER MEDICAL TREATMENT.**

# KEN BURNETT

**Code Consultant**
**7615 Elling Road**
**Cheyenne, Wyoming 82009**

October 28, 2008

Mr. Jeffrey A. Tennyson
235 East Broadway
P. O. Box 4162
Jackson, Wyoming 83001

RE: Preliminary review of submitted information and photos for Ramirez v. Callicoat case.

Dear Mr. Tennyson,

At your request, I am submitting the following information regarding the above case;

Every building built within the State of Wyoming is required to meet the minimum standards for fire and life safety regardless if they are inspected or not. The minimum standard within the state since 1979 has been the Uniform Building Code (UBC), Uniform Mechanical Code, Uniform Fire Code and the National Electrical Code from 1979 through 2003. In 2003 the state adopted the International Building Code, International Fire Code the International Mechanical Code and the National Electrical Code.

For the purpose of this brief review I will use the 1979 UBC as my basis for the code issues.

**Section 102 The purpose of this code is to provide minimum standards to safeguard life or limb, health, property and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures within this jurisdiction and certain equipment specifically regulated herein.** (In this reference, the jurisdiction referred to is the State of Wyoming.)

**Section 102(e) Existing Occupancy. Buildings in existence at the time of adoption of this code may have their existing use or occupancy continued, if such use or occupancy <u>was legal</u> at the time of adoption of this code, <u>provided such continue use is not dangerous to life.</u>**

**Section 102(d) Maintenance. All buildings existing and structures, both existing and new, and all parts thereof, shall be maintained in a safe and sanitary condition. All devices or safeguards, which are required by this code, shall be maintained in conformance with the code edition under which installed. <u>The owner or his designated agent shall be responsible for the maintenance of buildings and structures.</u>**

(When the state adopts the building code it also adopts the above references as a part of Chapter One which is the Administration Chapter of the Uniform Building Code. The State of Wyoming has adopted the Uniform Building Code when each new edition is printed which is every three years. In 2003 the State of Wyoming adopted the new International Building Code and the State of Wyoming is currently on the 2006 edition.)

### Section 3303

Only one exit is required from an upper floor of a single family residence if the occupant load is 10 or less, I am assuming in this case the number of occupants is less than 10. The code would then require only one exit from this residence however, sliding doors shall not be used as required exit doors. From the photos, I only see sliding glass doors in this residence so this is the first deficiency. **No code complying exit doors in this residence.**

### Section 1716

A walking surface that is more than 30 inches above the adjacent grade is required to have a guardrail with intermediate balusters placed 9 inches on center. The guardrail shall be a minimum of 36 inches in height and the intermediate balustrades positioned such that a 9 inch sphere cannot pass through at any point.

### Section 3302, 3304 and 3305

Because there is not a code complying exit from the deck to the residence an exit from the deck is required. This would require a code complying stair and handrail. The width of the stair would be 30 inches, with a maximum of 8 inch risers with a minimum of 9 inch treads and a handrail placed between 30 to 34 inches above the nosing of the treads on at least one side of the stairway. The intermediate balusters on the stairway are required to be placed such that a 9 inch sphere cannot pass between them.

At this time I have reviewed the photos only, however, I believe the above code references are valid and pertain to this case. After visiting the site and making an inspection of the structure, I will be able to further clarify the code deficiencies identified in this report as well as provide any other necessary information related to this case.

Respectfully submitted,

K. R. Burnett

# KENNETH R. BURNETT
**7615 Elling Road**
**Cheyenne, Wyoming 82009**
**307-637-6712**

---

## EMPLOYMENT HISTORY

March, 2003 to Present – Director of Major Maintenance, School Facilities Commission, State of Wyoming, 1920 Thomes, Suite 200, Cheyenne, Wyoming. Job duties include develop guidelines, rules and regulations for the Department to monitor all school construction within the State of Wyoming. Including developing formulas for payments of monies to districts for both major and minor school maintenance projects. Review and approve building designs, materials, construction methods, expenditures of funds for school construction for the State of Wyoming.

May, 1998 to March, 2003 – Project Engineer/Manager for the State of Wyoming, Department of Administration and Information, General Services Division.

Job duties included appropriating funding for major construction projects for the State of Wyoming, developing designs, code reviews and plan reviews, field inspections, reporting, managing contractors for studies involving state owned buildings within the State of Wyoming. Projects included Men's Maximum Security Prison, Rawlins, Intensive Care Unit, State Hospital, Evanston, Capital Parking Structure, Cheyenne, Space Studies for Capital, Herschler Building and Hathaway Building, Cheyenne.

Dec., 1993 to May 1998 – State of Wyoming, Department of Fire Prevention and Electrical Safety, Herschler Building, Cheyenne, Wyoming. Plan Review Analyst.

Job duties included review of all submitted construction plans for code compliance, field inspection, training of field inspectors to familiarize them with current construction codes, consult with architects, engineers, contractors and owners to achieve code compliance in new construction projects, setting up the annual Fire Marshal's Conference.

July, 1985 to Dec., 1993 – Owner and Senior Consultant for Code Consulting and Inspections, Inc. Founded this company to provide needed building department functions to small jurisdictions. Also developed a working relationship with larger jurisdictions for consulting services on an as-needed basis. Provided complete building department services to the City of Black Hawk, Colorado prior to and during the initiating of gamming. These services included plan review, field inspections, consultations, coordinating utilities and other local and federal governmental agencies during the construction process, developing planning and zoning regulations, developed construction ordinances for the City, historic development regulations, all building permitting and contractor registration and renewal functions. Developed effective communication procedures for contractors and owners for the construction processes to proceed on projects with the least amount of difficulty. Provided elevator inspections to three large jurisdictions within the State of Colorado including Adolph Coors Company. I provided consulting services in the following areas: Uniform Building Code, Uniform Mechanical Code, Uniform Plumbing Code, Uniform Fire Code, ANSI A17.1 Safety Code for Elevators and Escalators, National Fire Codes, Model Energy Code and various other codes and standards dealing with the construction and maintenance of buildings and structures. Supervised two full time employees and two part time employees.

Jan., 1981 to July, 1985 – Started with The Building Department, Inc. as a field inspector for residential buildings only. Became a partner in the Company as well as senior inspector / consultant on all types of construction projects. Coordinated and supervised six employees to provide necessary research, review and field inspection on all projects. Conducted meetings, consultations and training for engineers, architects, contractors and developers. Developed reports, forms and procedures for building failure investigations, including testifying in court as an expert witness. This company was dissolved in 1985 at which time I started my own company.

July, 1976 to Jan., 1981 – police officer for the City of Glendale, Colorado

Jan., 1971 to July, 1976 – Patrolman for the Colorado State Patrol, Ft. Collins, Colorado.

---

**EDUCATION**

Primary education Aurora, Colorado
Secondary Education, graduated Aurora Central High School, 1966
Community College of Denver special interest classes, 1967

Lincoln Technical Institute, Englewood, Colorado, 1967
Community College of Denver, Police Sciences, 1972
Colorado State University, Emergency Medical Technician, 1975
University of Denver, 1982

## CERTIFICATIONS

International Conference of Building Officials (ICBO)
International Code Conference (ICC)
    Certified Building Inspector
    Certified Plans Examiner
    Certified Mechanical Inspector
    Certified Plumbing Inspector

National Association of Elevator Safety Authorities (NAESA)
    Certified Elevator Inspector

American Concrete Institute
    Certified Concrete Testing Technician

## AFFILIATIONS

Wyoming Conference of Building Officials (WCBO)
International Conference of Building Officials (ICBO)
International Code Conference (ICC)
National Fire Code Institute (IFCI)
National Fire Protection Association (NFPA)
International Facility Managers Association (IFMA)
International Association of Electrical Inspectors (IAEA)

## NATIONAL COMMITTEE MEMBERSHIPS

Western Regional Fire Code Development Committee (NFPA)
Member since 1994

## INTERNATIONAL COMMITTEE MEMBERSHIPS

Urban Wildland Interface Code Committee (IFCI)

# KEN BURNETT
**Code Consultant**
**7615 Elling Road**
**Cheyenne, Wyoming 82009**

October 27,2008

Mr. Jeffrey A. Tennyson
235 East Broadway
P. O. Box 4162
Jackson, Wyoming 83001

Re: Ramirez v. Callicoat case.

Mr. Jeffry Tennyson,

Please accept the following information as to current billing rates related to the above case.

| | |
|---|---|
| Travel time, field inspections, research and reports | $ 100.00 per hour |
| Mileage | $   0.55 per mile |
| Daily expenses (meals, hotel, film, processing, copies, printing, postage) | $     At cost |

Respectfully submitted,

K. R. Burnett

**"Thank you for your business"**



**CAZA Drilling Inc.**
**Employee Benefit Plan**
**Plan Document**

**January 1, 2005**

EXHIBIT C

# SECTION IX—THIRD PARTY RECOVERY PROVISION

### A. Right of Subrogation and Refund

**When this provision applies.** The *participant* may incur medical charges due to *injuries* which may be caused by the act or omission of a third party or a third party may be responsible for payment. In such circumstances, the *participant* may have a claim against that third party, or insurer, for payment of the medical charges. Accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan any rights the *participant* may have to recover payments from any third party or insurer. This subrogation right allows the Plan to pursue any claim which the *participant* has against any third party, or insurer, whether or not the *participant* chooses to pursue that claim. The Plan may make a claim directly against the third party or insurer, but in any event, the Plan has a lien on any amount recovered by the *participant* whether or not designated as payment for medical expenses. This lien shall remain in effect until the Plan is repaid in full.

The *participant*:

a. automatically assigns to the Plan his or her rights against any third party or insurer when this provision applies; and

b. must repay to the Plan the benefits paid on his or her behalf out of the recovery made from the third party or insurer.

### B. Amount subject to Subrogation or Refund

The *participant* agrees to recognize the Plan's right to subrogation and reimbursement. These rights provide the Plan with a 100%, first dollar priority over any and all recoveries and funds paid by a third party to a *participant* relative to the *injury* or *illness*, including a priority over any claim for non-medical charges, attorney fees, or other costs and expenses. Accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan any and all rights the *participant* may have to recover payments from any Responsible third party. Further, accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan the *participant's* third party Claims.

Notwithstanding its priority to funds, the Plan's subrogation and refund rights, as well as the rights assigned to it, are limited to the extent to which the Plan has made, or will make, payments for medical charges as well as any costs and fees associated with the enforcement of its rights under the Plan. The Plan reserves the right to be reimbursed for its court costs and attorneys' fees if the Plan needs to file suit in order to recover payment for medical expenses from the *participant*. Also, the Plan's right to subrogation still applies if the recovery received by the *participant* is less than the claimed damage, and, as a result, the claimant is not made whole.

When a right of recovery exists, the *participant* will execute and deliver all required instruments and papers as well as doing whatever else is needed to secure the Plan's right of subrogation as a condition to having the Plan make payments. In addition, the *participant* will do nothing to prejudice the right of the Plan to subrogate.

### C.  Conditions Precedent to Coverage

The Plan shall have no obligation whatsoever to pay medical benefits to a *participant* if a *participant* refuses to cooperate with the Plan's reimbursement and subrogation rights or refuses to execute and deliver such papers as the Plan may require in furtherance of its reimbursement and subrogation rights. Further, in the event the *participant* is a minor, the Plan shall have no obligation to pay any medical benefits incurred on account of *injury* or *illness* caused by a responsible third party until after the *participant* or his authorized legal representative obtains valid court recognition and approval of the Plan's 100%, first dollar reimbursement and subrogation rights on all recoveries, as well as approval for the execution of any papers necessary for the enforcement thereof, as described herein.

### D.  Defined terms

"Participant" means anyone covered under the Plan, including minor dependents.

"Recover," "Recovered," "Recovery" or "Recoveries" means all monies paid to the *participant* by way of judgment, settlement, or otherwise to compensate for all losses caused by the *injury* or *illness*, whether or not said losses reflect medical charges covered by the Plan. "Recoveries" further includes, but is not limited to, recoveries for medical expenses, attorneys' fees, costs and expenses, pain and suffering, loss of consortium, wrongful death, lost wages and any other recovery of any form of damages or compensation whatsoever.

"Refund" means repayment to the Plan for medical benefits that it has paid toward care and treatment of the *injury* or *illness*.

"Subrogation" means the Plan's right to pursue and place a lien upon the *participant's* claims for medical charges against the other person.

"Third party" means any third party including another person or a business entity.

### E.  Recovery From Another Plan

Recovery from another plan under which the *participant* is covered. This right of refund also applies when a *participant* recovers under an uninsured or underinsured motorist plan (which will be treated as third party coverage when reimbursement or subrogation is in order), homeowner's plan, renter's plan, medical malpractice plan or any liability plan.

### F.  Rights of Plan Administrator

The *plan administrator* has a right to request reports on and approve of all settlements.

Ensign United States Drilling Inc.
Employee Benefit Plan
Plan Document

Amended and Restated as of January 1, 2007

# SECTION IX—THIRD PARTY RECOVERY PROVISION

## A. Right of Subrogation and Refund

**When this provision applies.** The *participant* may incur medical charges due to *injuries* which may be caused by the act or omission of a third party or a third party may be responsible for payment. In such circumstances, the *participant* may have a claim against that third party, or insurer, for payment of the medical charges. Accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan any rights the *participant* may have to recover payments from any third party or insurer. This subrogation right allows the Plan to pursue any claim which the *participant* has against any third party, or insurer, whether or not the *participant* chooses to pursue that claim. The Plan may make a claim directly against the third party or insurer, but in any event, the Plan has a lien on any amount recovered by the *participant* whether or not designated as payment for medical expenses. This lien shall remain in effect until the Plan is repaid in full.

The *participant*:

   a.   automatically assigns to the Plan his or her rights against any third party or insurer when this provision applies; and

   b.   must repay to the Plan the benefits paid on his or her behalf out of the recovery made from the third party or insurer.

## B. Amount subject to Subrogation or Refund

The *participant* agrees to recognize the Plan's right to subrogation and reimbursement. These rights provide the Plan with a 100%, first dollar priority over any and all recoveries and funds paid by a third party to a *participant* relative to the *injury* or *illness*, including a priority over any claim for non-medical charges, attorney fees, or other costs and expenses. Accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan any and all rights the *participant* may have to recover payments from any Responsible third party. Further, accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan the *participant's* third party Claims.

Notwithstanding its priority to funds, the Plan's subrogation and refund rights, as well as the rights assigned to it, are limited to the extent to which the Plan has made, or will make, payments for medical charges as well as any costs and fees associated with the enforcement of its rights under the Plan. The Plan reserves the right to be reimbursed for its court costs and attorneys' fees if the Plan needs to file suit in order to recover payment for medical expenses from the *participant*. Also, the Plan's right to subrogation still applies if the recovery received by the *participant* is less than the claimed damage, and, as a result, the claimant is not made whole.

When a right of recovery exists, the *participant* will execute and deliver all required instruments and papers as well as doing whatever else is needed to secure the Plan's right of subrogation as a condition to having the Plan make payments. In addition, the *participant* will do nothing to prejudice the right of the Plan to subrogate.

## C.  Conditions Precedent to Coverage

The Plan shall have no obligation whatsoever to pay medical benefits to a *participant* if a *participant* refuses to cooperate with the Plan's reimbursement and subrogation rights or refuses to execute and deliver such papers as the Plan may require in furtherance of its reimbursement and subrogation rights. Further, in the event the *participant* is a minor, the Plan shall have no obligation to pay any medical benefits incurred on account of *injury* or *illness* caused by a responsible third party until after the *participant* or his authorized legal representative obtains valid court recognition and approval of the Plan's 100%, first dollar reimbursement and subrogation rights on all recoveries, as well as approval for the execution of any papers necessary for the enforcement thereof, as described herein.

## D.  Defined terms

"Participant" means anyone covered under the Plan, including minor dependents.

"Recover," "Recovered," "Recovery" or "Recoveries" means all monies paid to the *participant* by way of judgment, settlement, or otherwise to compensate for all losses caused by the *injury* or *illness*, whether or not said losses reflect medical charges covered by the Plan. "Recoveries" further includes, but is not limited to, recoveries for medical expenses, attorneys' fees, costs and expenses, pain and suffering, loss of consortium, wrongful death, lost wages and any other recovery of any form of damages or compensation whatsoever.

"Refund" means repayment to the Plan for medical benefits that it has paid toward care and treatment of the *injury* or *illness*.

"Subrogation" means the Plan's right to pursue and place a lien upon the *participant's* claims for medical charges against the other person.

"Third party" means any third party including another person or a business entity.

## E.  Recovery From Another Plan

Recovery from another plan under which the *participant* is covered. This right of refund also applies when a *participant* recovers under an uninsured or underinsured motorist plan (which will be treated as third party coverage when reimbursement or subrogation is in order), homeowner's plan, renter's plan, medical malpractice plan or any liability plan.

## F.  Rights of Plan Administrator

The *plan administrator* has a right to request reports on and approve of all settlements.

# JEFFREY A. TENNYSON
### Attorney at Law

TELEPHONE (307) 733-1797                                   FACSIMILE (307) 733-9258

June 22, 2007

*Via Facsimile and U.S. Mail*
@ 208-424-0595

AmeriBen/IEC Group
P.O. Box 7186
Boise, Idaho 83707
Attention: Vickie Ewards

    Re:   Insured: Lisa Ramirez
         Policy/Employee Number: ▮▮▮▮▮▮▮ Ramirez)
         Date of Injuries: June 23, 2006

Dear Ms. Edwards:

    Thank you for taking time to discuss my client, Lisa Ramirez. On her behalf, I agreed to investigate and potentially prosecute a personal injury claim resulting from a fall she took on June 23, 2006. As an initial step, I contacted your company to investigate the amount of benefits paid and the potential for subrogation claims.

    As we discussed, I am requesting (1) a printout of all benefits paid on behalf of Ms. Ramirez since the inception of coverage and (2) a separate printout of only those benefits that relate to treatments for her back or neck. I enclose a Notice of Representation and a signed medical authorization to facilitate this request.

    The fall happened on June 23, 2006. Lisa Ramirez went to the home of a neighbor, James Callicoat, to discuss a recent event that was upsetting to her and to determine what Mr. Callicoat knew about that event. He greeted her at the door and gave her a quick tour of his house. The tour ended on a second floor deck where they began discussing the prior event. The discussion soon began to upset Ms. Ramirez and she decided to leave before becoming too emotional. She turned to leave the deck and walked quickly toward an open space in the guardrails where she presumed there was a flight of stairs. *There were no stairs.* By the time she took that first step, it was too late to avoid a fall and she fell six to ten feet and landed hard on the ground. As your records should reflect, she has had extensive medical treatments to her back since this fall, including a very significant and expensive surgery to place metal rods in her spine.

    Although the neighbor's liability for this fall may be relatively easy to establish, it may be impossible to convince a judge or jury that a substantial portion of my client's back problems are the result of the fall, not the pre-existing medical conditions. Furthermore, we believe that the neighbor has limited homeowners' insurance and that the damages to Ms. Ramirez greatly exceed the available limits of coverage.

235 EAST BROADWAY   P.O. BOX 4162   JACKSON, WYOMING  83001
tennyson@wyoming.com

Under these circumstances, any attempt to recover from the responsible party would only be justified if a prior agreement can be reached with your company as to what amount would need to be repaid if recovery is obtained. There is no incentive to seek compensation for this fall if any recovery would simply be paid to your company to satisfy subrogation. Please have someone in your company's subrogation or legal department contact me to discuss this matter in more detail once you have provided the requested printouts to me.

It was a pleasure speaking with you and I thank you for your cooperation. Please let me know if you need additional information or if you have questions or concerns.

Sincerely,

A. Tennyson

JAT/se

## AUTHORIZATION TO DISCLOSE HEALTH INFORMATION

The following individual or organization is authorized to make the disclosure:

_____

I hereby authorize the above named individual or organization to release to Jeffrey A. Tennyson, Attorney at Law, P.O. Box 4162, Jackson, Wyoming 83001, and any employee of Jeffrey A. Tennyson Law Office, copies of all information comprising the entire record from the individual or organization named above, including but not limited to:

| Final Diagnoses | Operative Reports | Emergency Room Treatments |
|---|---|---|
| Discharge Summaries | Pathology Reports | Therapy Notes |
| Histories | Progress Notes | Clinical Notes |
| Physical Examinations | Physician's Orders | Medication Records |
| Consultation Reports | Office Notes | Evaluations |
| Diagnostic Test Reports | Computer entries/notes, electronic mail | HIV/AIDS Results |
| Diagnostic Images | Patient Forms and Questionnaires | Correspondence |
| MRI's, CT Scans, X-Rays, Films | Medical Bills | Complete Patient File |

I understand that the information in my health record may include information relating to sexually transmitted disease, acquired immune deficiency syndrome (AIDS), information concerning testing or treatment of AIDS and AIDS-related conditions, drug or alcohol abuse, human immunodeficiency virus (HIV), drug-related conditions, alcoholism, and/or psychiatric/psychological conditions, including specifically, but not limited to, those records contemplated by 42 U.S.C. §290 dd-2, 42 U.S.C.§290 dd-3 and 42 U.S.C.§290 ee-3.

To assist in the identification and location of these records, I am providing the following information:

Name: Lisa L. Ramirez
Social Security Number: ▮▮▮▮▮▮
Date of Birth: ▮▮▮▮▮

I hereby authorize the use of a photocopy of this release as an original.

I understand I have the right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to you. I understand that revocation will not apply to information that has already been released in response to this authorization. I understand that revocation will not apply to your insurance company when the law provides my insurer with the right to contest a claim under my policy. Unless otherwise revoked, this authorization will expire on the following date, event or condition: August 1, 2008. If I fail to specify an expiration date, event or condition, this authorization will expire one (1) year from the date stated below.

I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I understand that the organization or individual identified above cannot condition treatment, payment, enrollment, or eligibility for benefits on whether I sign this authorization. I understand I may inspect or copy the information to be used or disclosed, as provided in C.F.R.164.524. I understand that any disclosure of information carries with it the potential for an unauthorized redisclosure, and the information may not be protected by federal confidentiality rules. If I have questions about disclosure of my health information, I can contact the Privacy Officer or other individual at the organization identified above.

By reason of the fact that the information acquired was from a physician, surgeon, or health care provider and the information is confidential to me, I am requesting you treat such information as confidential and do not furnish any confidential information, in any form, to anyone, other than the attorneys listed above, without written authorization from me. This release does not authorize any care provider or physician of mine to speak with any of the representatives or attorneys of any adverse party relative to the care given to me, except to the extent necessary to obtain copies of any and all medical records released by authorization of this release.

_____            _____
Witness                                               Patient

                                                      Date: 6/21/07

_____
** This release is intended to comply with the Health Information Portability and Accountability Act (HIPAA) and the individual forms of health care providers or health care institutions. Acceptance of this form is required to avoid the expense and inconvenience of complying with an institution's separate form, or requiring you to respond to a subpoena for the information.

## NOTICE OF REPRESENTATION

Lisa L. Ramirez hereby provides notice that she has retained Jeffrey A. Tennyson, Attorney at Law, 235 East Broadway, P.O. Box 4162, Jackson, Wyoming 83001, to represent her with respect to any and all claims for damages arising from injuries suffered when she fell on June 23, 2006 at the residence of James Callicoat in Fremont County, Wyoming.

Lisa L. Ramirez

STATE OF WYOMING        )
                        ) SS.
COUNTY OF FREMONT_       )

The foregoing document was sworn and subscribed to before me by Lisa L. Ramirez this ___21st___ day of June, 2007.

(Seal)

Tara N. Curtis - Notary Public
County of
Fremont        State of
               Wyoming
My Commission Expires March 3, 2010

Tara N Curtis
Notary Public

My Commission Expires: 3-3-10

# JEFFREY A. TENNYSON
## Attorney at Law

TELEPHONE (307) 733-1797                                    FACSIMILE (307) 733-9258

March 10, 2008

*Via Facsimile Only*
*215-784-1772*

Russel D. Bowman, Jr. Esq.
Strategic Recovery Partnership, Inc.
208 North Eaton Road
Willow Grove, PA 19090

> Re:    My Client (AmeriBen's Insured): Lisa Ramirez
>        Your File Number: 07ABN22493
>        Date of Loss: June 23, 2006

Dear Mr. Bowman:

As you requested, I write to provide an updated status of the third party claims of Lisa Ramirez

The litigation, *Ramirez v. Callicoat*, is pending in Fremont County, Wyoming District Court. Discovery has been exchanged and, pursuant to an agreement between the parties, defense counsel is being provided with medical authorizations and he has agreed that his office will gather the extensive medical records of Ms. Ramirez over the past 20 years and provide copies to us.

No depositions have been taken and discovery is likely to take a few months. The court will be asked to establish a trial date and other deadlines in about three months.

Please contact me if you have any further questions or concerns regarding this matter at this time.

Sincerely,

Jeffrey A. Tennyson

JAT/se

235 EAST BROADWAY   P.O. BOX 4162   JACKSON, WYOMING 83001
tennyson@wyoming.com

EXHIBIT E

02 Your Client Ramirez Lisa.txt
From: Jeffrey Tennyson [tennyson@wyoming.com]
Sent: Thursday, April 16, 2009 10:30 AM
To: John Willemin
Subject: Re: Your Client: Ramirez, Lisa

Attachments: Medical Expenses - Ramirez.xls

John-

I see I did not attach medical summary before so I attach here with the hope that it
will help.

The summary itemizes all medical expenses for those records we had received by the
time we quit adding last week.  Even though there were many more medical expenses
incurred, the summary amount, less the amount paid by AmeriBen/Ensign is more that
$50,000. Isn't that itemization, combined with the additional estimates from Lisa
Ramirez for out-of-pocket expenses, enough?

If I have missed the point, perhaps it's best just to call me to discuss.
Thank you.

Jeff
--
Jeffrey A. Tennyson, P.C.
Attorney at Law
P.O. Box 4162
235 East Broadway
Jackson, Wyoming  83001
(307) 733-1797
tennyson@wyoming.com


On 4/16/09 6:29 AM, "John Willemin" <jwillemin@srpsubro.com> wrote:

> Jeff,
>
> Sorry.  I guess that was not too clear.  Your e-mail below said that
> you stopped counting medical expenses when you hit $178,000.00, as you
> were near settlement.  Your fax of April 8, 2009, indicated that Lisa
> Ramirez and her husband paid about $45,000.00 in medical expenses not covered by
insurance.
>
> I won't need records or receipts.  Just an itemization of the $45,000.00.
>
> Let me know if you have any questions.
>
> Thanks,
>
> John
>
>
> -----Original Message-----
> From: Jeffrey Tennyson [mailto:tennyson@wyoming.com]
> Sent: Wednesday, April 15, 2009 6:10 PM
> To: John Willemin
> Subject: Re: Your Client: Ramirez, Lisa
>
> John,
>
> I'm not sure I understand your second paragraph.
>
> I am attaching our medical expense summary (showing $178,000) and
                                    Page 1

EXHIBIT F

```
                          02 Your Client Ramirez Lisa.txt
> assure you again that there has not been much of anything paid by any
> other insurance plan.  Since you know what you paid, it's pretty basic
> math. (Difference of $51,000 or so represents such things as
> co-payments and direct payments to doctors and other providers)
>
> In addition to the amounts on medical summary, Lisa incurred at least
> $23,000 more for such things as:
>
> -out-of-pocket Rx expenses (Estimate of $8500) -over-the-counter
> medication expenses (Estimate of $6800) -orthopedic appliances (back
> braces, wheelchair, etc) (Estimate of $500) -COBRA payments to keep
> the coverage in place (Estimate of of $4250) -Airfare to St. Paul for
> surgery (two visits
> needed) (Estimate of $2000) -costs to modify her home for handicap
> accessibility (Estimate of $500) -Misc costs (for canes, shower bench,
> bed table, bedpan)(Estimate of $500)
>
> Although I may be able to get a little better estimates from Lisa
> Ramirez, actual records and receipts will be very difficult to locate in short
order.
>
> I trust you will advise me of what other specific information you need.
>
> Thank you.
>
> Jeff Tennyson
>
>
> On 4/15/09 12:37 PM, "John Willemin" <jwillemin@srpsubro.com> wrote:
>
>> Jeff,
>>
>> Thank you for the information.  No question you earned your fee.  I
>> needed the information for a proposal to our client.
>>
>> I will need some details on the medical expenses.  I would only need
>> what Ms. Ramirez has paid out-of-pocket for medicals, up until you
>> stopped counting.  That should be about $45,000.00.
>>
>> Thank you.
>>
>> John
>>
>>
>> -----Original Message-----
>> From: Jeffrey Tennyson [mailto:tennyson@wyoming.com]
>> Sent: Wednesday, April 15, 2009 1:51 PM
>> To: John Willemin
>> Subject: Re: Your Client: Ramirez, Lisa
>>
>> John-
>>
>> (Note:  In the interests of time, I am responding without input from
>> my client, Lisa Ramirez.  I will copy her with email as she will
>> likely have additional information.)
>>
>> The $45,000 question first.  The amount was a complete estimate by
>> me, with little input from Lisa Ramirez.  Turns out, I was very low
>> in my
> estimation.
>> Depending on how much detail you would like, I may need some time to
>> put together a better estimate.  Here is some additional information
>> for
                                      Page 2
```

02 Your Client Ramirez Lisa.txt
> now:
>>
>> When we stopped adding medical expenses last week because settlement
>> appeared to be likely, we were at $178,000 in total medical expenses
>> that have been incurred for the treatment of Lisa's injuries since
>> her fall of June 23, 2006.  There are some fairly significant amounts
>> to be added to that summary to reflect the total expenses.  One example:
>> we recently received a 44 page printout of the pharmacy records.
>> Although there is no total provided, it appears that this will add at
>> least another $5,000 to the total expenses.  (This is just one of the
>> pharmacies and others are yet to respond to requests.)
>>
>> Another example:  We have not yet received the medical expense
>> records for Lisa's most recent treatments, after she returned to live
>> in Wyoming in the fall of 2008.  Since then, she has incurred
>> expenses for pain management specialists, physical therapy sessions,
>> and substantial more expense for medications.  This could be another
>> several thousand dollars, some of which may be covered by her
>> husband's health insurance plan, but subject to repayment under ERISA
>> in
> any event.
>>
>> Finally, the total expenses do not yet include expenses for
>> out-of-pocket costs such as orthopedic braces or pillows,
>> over-the-counter pain relievers, travel expenses for attending
>> treatments (some are hours away from where she
>> lives) or the trips to Minnesota for appointments and surgery.  It
>> would take some time to gather these as well.
>>
>> So, the $45,000 came from deducting from the total expenses
>> ($178,000) the amount AmeriBen paid ($127,000) and an estimated
>> amount for what may have been paid by the current health care plan.
>> Since that plan is also ERISA, it was probably overly optimistic to
>> expect the latter deduction.  The actual ³out-of-pocket² expenses
>> incurred by Lisa Ramirez and her husband is likely much, much higher
>> than $45,000, it will probably be in excess of $65,000.
>>
>> On to Question #1:  I am happy to report that the costs of
>> prosecuting this case were kept to a minimum - in hopes that we could
>> resolve without incurring huge expert witness fees shortly before
>> trial.  We were able to keep the expenses under $5,000.  The current
>> total is $4,022.45, with another several hundred in bills expected.
>>
>> The amount of my fee depends.  My Representation Agreement with Lisa
>> provides for a fee equal to 40% of Gross Recovery (my standard agreement).
>> I do not necessarily expect to receive the amount earned, but do
>> believe I am entitled under the circumstances.  (This was a very
>> difficult case as I have mentioned.)
>>
>> I do hope this provides enough information for a decision at your end
>> very soon.  The settlement cannot be reached until you and I have
>> come to an understanding, that can be confirmed in writing.
>>
>> Thank you.
>>
>> Jeff Tennyson
>>
>>
>> On 4/15/09 8:16 AM, "John Willemin" <jwillemin@srpsubro.com> wrote:
>>
>>> Jeff,
>>>
>>> I just have a few questions.

Page 3

```
                             02 Your Client Ramirez Lisa.txt
>>>
>>> 1.  What are the attorney fees and costs?
>>> 2.  May I have an itemization of the $45,000.00 in out-of-pocket
> expenses?
>>>
>>> Thanks,
>>>
>>> John
>>>
>>>
>>>
>>> Jeff,
>>>
>>> I have received the fax.  Thank you.  I'll let you know as soon as I
>>> have an answer.
>>>
>>> John
>>>
>>> -----Original Message-----
>>> From: Jeffrey Tennyson [mailto:tennyson@wyoming.com]
>>> Sent: Wednesday, April 08, 2009 1:44 PM
>>> To: John Willemin
>>> Subject: Re: Your Client: Ramirez, Lisa
>>>
>>> John-
>>>
>>> A letter is being faxed to you now. I hope you and AmeriBen can
>>> consider the matter and get back to us soon.
>>>
>>> Thank you for your continued cooperation and consideration.
>>>
>>> Jeff Tennyson
>>>
>>>
>>> On 4/7/09 9:15 AM, "John Willemin" <jwillemin@srpsubro.com> wrote:
>>>
>>>> Jeff,
>>>>
>>>> For starters, please find attached the Summary Plan Description and
>>>> the Form 5500 for the Ensign U.S. Drilling Health Plan, as requested.
>>>>
>>>> I have, once again, notified JWHutton that they are not supposed to
>>>> be on this case.  I have an e-mail exchange between the plan,
>>>> (Ensign), and Ameriben, (our client), to that effect.  I will
>>>> follow-up with JWHutton by phone also.
>>>>
>>>> I will try to get some written confirmation from JWHutton that they
>>>> will close their file, and will forward that to you.
>>>>
>>>> Please contact me if you have further questions.
>>>>
>>>> John
>>>>
>>>
>>>
>>>
>>>
>>
>>
>>
>>
>
>
                                      Page 4
```

02 Your Client Ramirez Lisa.txt

>
>